# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

STATE FARM FIRE AND CASUALTY
COMPANY and SAFECO INSURANCE
COMPANY of AMERICA,

                             Plaintiffs,

      v.                                                             Case No. 04-C-359

TOSHIBA AMERICA CONSUMER
PRODUCTS, INC.,

                             Defendant.

# DECISION AND ORDER

      This case arises from insurers' attempts to hold the manufacturer of an allegedly defective television set liable for the damage caused by a fire that broke out at a residence in Milwaukee, Wisconsin in 1999. The plaintiffs, State Farm Fire & Casualty Company and Safeco Insurance Company of America (collectively "State Farm"), filed their complaint against the defendant, Toshiba America Consumer Products ("Toshiba") in Milwaukee County Circuit Court on March 4, 2004, alleging negligent design, manufacture, and testing; failure to warn; and breach of express and implied warranties. That action was removed to federal court on April 9, 2004.

      On August 1, 2005, Toshiba filed its motion for summary judgment and motion *in limine*, both informed by the same argument. Toshiba asks the Court to exclude the

testimony of State Farm's expert, Paul Hansen ("Hansen") because his opinions are unreliable. Toshiba argues that, once Hansen's expert opinion is struck, State Farm will be unable to succeed on its claims and, thus, an entry of summary judgment will be appropriate.

## I. STANDARD

A court will grant summary judgment if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A "material fact" is one which, under the relevant substantive law, might affect the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A "genuine issue" of material fact exists if a reasonable juror could find that the evidence supports a verdict for the nonmoving party. *Id.*

The moving party bears the initial burden of demonstrating the absence of any genuine issue of material fact. *Celotex Corp.*, 477 U.S. at 323. When considering the movant's case, the Court should take all inferences in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Hall v. Bennett*, 379 F.3d 462, 465 (7th Cir. 2004). If the movant meets his burden (by showing an absence of a genuine issue of material fact), the nonmovant may not rest on the pleadings. Instead, the nonmovant must come forward with evidence that there is a genuine issue for trial that would support a reasonable jury verdict on every issue for which he bears the

burden of proof at trial. Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 248 (citing *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253 (1968)); *Celotex Corp.*, 477 U.S. at 322-24. If the nonmoving party bears the burden of proof on a matter at trial, and he is unable "to establish the existence of an element essential to [his] case," summary judgment is appropriate. *Celotex*, 477 U.S. at 322-23.

## II. FACTS

This case centers on who should pay for damages for a fire that occurred at a residence (the "Brewer residence") in Milwaukee, Wisconsin on April 3, 1999 at 3300-32 N. Lake Drive. (State Farm Fire & Cas. Co.'s Resp. to Def. Toshiba Am. Consumer Prods., Inc.'s Proposed Findings of Fact ("Pl.'s Resp. to Def.'s Facts") ¶ 5; Def.'s Proposed Findings of Fact ("DPFOF") ¶ 5.)[1] The plaintiff insurance companies want to be paid for the insurance payments that they made to their insureds pursuant to fire loss coverage. (DPFOF ¶ 6.) The plaintiffs allege that the defendant's product, a television ("a TACP television"), started the fire. (DPFOF ¶ 7; Pl.'s Resp. to Def.'s Facts ¶ 6.)

Different investigators looked into those circumstances surrounding the fire. A Milwaukee Police Department Investigator, James Henner ("Henner") investigated the scene. (DPFOF ¶ 8.) Henner, while examining debris at the scene and in the southeastern corner of the den room of 3330 N. Lake Drive, recovered a damaged metal frame that evidenced

---

[1] Though the opposition brief to Toshiba's motions was filed only in State Farm's name, Safeco Insurance Company of America, State Farm's co-plaintiff, has informed the Court that it joins State Farm in opposing the pending motions.

3

heat damage. (Pl.'s Resp. to Def.'s Facts ¶ 9.) This damage, Henner hypothesized, might indicate that the fire originated in that particular room. (*Id*.) Henner also found the remains of a torchier lamp in the same area and noted that the lamp was both on and unattended at the time of the fire. (Pl.'s Resp. to Def.'s Facts ¶ 10; DPFOF ¶¶ 10, 11.) Henner did not opine on the cause of the fire. (DPFOF ¶ 12.)

Ryan Kelm ("Kelm"), a Fire Investigator, was contacted by State Farm to investigate the fire. (Pl.'s Resp. to Def.'s Facts ¶ 13, DPFOF ¶ 13). Kelm thought that the fire originated in the southwest region of the living room in the location of the television set. (Pl.'s Resp. to Def.'s Facts ¶ 14; DPFOF 14.) In addition to the television set, that area also contained a VCR and unidentified speaker. (DPFOF ¶ 15.) An electrical power strip was located within two feet of the TACP set. (DPFOF ¶ 16.) Kelm also located a Toshiba television box in another room of the Brewer residence. The Brewers told him that it was from the television unit in the den. (DPFOF ¶ 17.)

Kelm recommended to State Farm that Paul W. Hansen ("Hansen") investigate the fire and stated that he would defer to Hansen regarding the possibility that the television set contained a design defect. (Pl.'s Resp. to Def.'s Facts ¶ 20; DPFOF ¶ 20.) Accordingly, State Farm retained Hansen, a Forensic Electrical Engineer, who works for Engineering & Fire Investigations, Inc. (State Farm & Cas. Co.'s Proposed Findings of Fact ("PPFOF") ¶ 7.) Hansen has worked as a Forensic Electrical Engineer for twenty-one years and has investigated approximately 100 fires per year. (PPFOF ¶¶ 8, 9.) At the start of his career,

4

he investigated approximately one television fire per month. (Toshiba Am. Consumer Prods.' Resp. to State Farm and Cas. Co.'s Proposed Findings of Fact ¶ 10.) For the last five or six years, he has investigated approximately two television set fires per year. (*Id.*) Over the course of his career, Hansen has investigated over 100 fires involving television sets. (PPFOF ¶ 10.) For the instant case, he was not hired as an origin investigator and, therefore, did not perform all the steps involved in an origin investigation. (DPFOF ¶ 21; Pl.'s Resp. to Def.'s Facts ¶ 21.) Still, based on his experience, he found nothing to dispute Kelm's placement of the origin of the fire. (Pl.'s Resp. to Def.'s Facts ¶ 21.)[2]

Hansen visited the Brewer residence to investigate the fire and commenced his investigation by looking at the exterior of the building, the transformer, the service entrance, and the panel in the basement. (Pl.'s Resp. to Def.'s Facts ¶ 23.) His work also consisted of spending several hours at the scene examining, documenting, and photographing both the scene and items affected by the fire. (PPFOF ¶ 11.) He performed a visual examination of the electrical equipment in the den. (Pl.'s Resp. to Def.'s Facts ¶ 23.) With Kelm's input, he also collected evidence from the scene, including the remnants of a television set, power cords, a torchier lamp, outlets, a television cart, outlet strips, cables, and a VCR. (Pl.'s Resp. to Def.'s Facts ¶ 23; PPFOF ¶¶ 12, 14.) These items were then shipped to Hansen's laboratory in Minnesota. (PPFOF ¶ 12, 13.) There, he conducted tests including x-raying

---

[2]The Court notes that the Defendants have taken some liberties in interpreting deposition testimony. Many of the factual "disputes" between the parties result from such liberal interpretation. Where facts are disputed, the Court has referred to the relevant portions of the record to establish a witness's testimony and has drawn all inferences in favor of the non-movant.

5

the television set recovered from the Brewer residence and performed "destructive testing" on the remains of that set's main circuit board. (PPFOF ¶¶ 15, 16.) This "destructive testing" involved removing and examining debris and components from the recovered television set. (PPFOF ¶ 17.)

Hansen also analyzed a radiograph and downloaded a schematic diagram for a Toshiba television, model number CF1922J. (DPFOF ¶ 24.) Hansen's investigation led him to conclude that the TACP television contained a manufacturing defect in the 120-volt portion of its circuit board and that this defect started the fire. (DPFOF ¶ 25.) At the time of his deposition, Hansen believed that the 120-volt portion of the circuit board was found on the right side–viewed as one facing the screen–of the television. (DPFOF ¶ 27.) Hansen thought that the complete destruction of the circuit board supported this position even though he could not identify the particular component therein that started the fire. (DPFOF ¶¶ 26, 28.) Nor could he identify the "first fuel" of the fire, though he believed that the television set's plastic case ultimately fuelled it. (DPFOF ¶¶ 30, 31.) Further testing did not modify these opinions. (DPFOF ¶¶ 32-34.) When conducting his investigation and formulating his opinions, Hansen never examined an exemplar television set. (DPFOF ¶ 34.)

The Court concludes its recitation of facts by addressing the exclusion of certain facts. First, the Court notes that five findings of fact proffered by Toshiba are based on a report prepared by one if its retained experts, Dr. E.P. Hamilton. (*See* DPFOF ¶¶ 35-40.) That

6

report is attached as an exhibit to the affidavit of Thomas K. Mullins ("Mullins"), an attorney representing Toshiba.

Rule 56(e) of the Federal Rules of Civil Procedure states that "[s]upporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Fed. R. Civ. P. 56(e). For the Court to consider Dr. Hamilton's report, Mullins–as the affiant–would have to be competent to testify about the report's contents. *See Northwestern Nat'l Ins. Co. v. Baltes*, 15 F.3d 660, 662 (7th Cir. 1994). But, he has no such personal knowledge. Even though this evidentiary defect was raised by State Farm in its opposition brief, Toshiba has not made any attempt to ameliorate the shortcoming. In fact, Toshiba's reply brief is silent on the issue. Since the wording of Rule 56 on this point is unambiguous and Toshiba's silence essentially concedes State Farm's objection, the Court has not considered those portions of Toshiba's proposed findings of fact numbered 35 to 40 that rely on the Hamilton report. Nor has the Court considered the contents of Dr. Hamilton's report.

There are other problems with the parties' briefing of the pending motions. For example, Toshiba's Proposed Finding of Fact No. 32, states: "After forming his opinions, Mr. Hansen performed additional testing consisting of removing the 'high voltage transformer' and 'high voltage wiring' for visual examination." This fact is purportedly based on a letter from Hansen to an attorney, which is appended to the aforementioned

7

Mullins Affidavit as Exhibit D. The Court has reviewed this letter, but finds no reference therein to either a "high voltage transformer" or "high voltage wiring."

Furthermore, the parties' briefings contain factual allegations that are not presented in their proposed findings of fact or the responses thereto. In its supporting brief, Toshiba states that the "super-hearted torchier lamp [at the fire scene] . . . did not have a heat guard." (Br. in Supp. of Mot. in Limine and Mot. for Summ. J. ("Supp. Br.") 2.) Even though this statement appears in the introductory portion of Toshiba's brief (versus its recitation of relevant facts), no fact was presented to the Court suggesting that the torchier lamp in the vicinity of the fire did not contain a guard. The Court should not have to peruse parties' briefs to ensure that unsupported facts are not improperly placed before the Court for consideration. Likewise, a schematic drawing of the fire scene, found on page four of Toshiba's supporting brief, was not proffered in the proposed findings.

It is possible that some of these facts are supported by documents provided by the parties. However, the Court typically does not scour the record to find support for factual propositions forwarded by the parties. The Court has reviewed the record in this case, and those facts properly before it. There is an assumption that the parties place before the Court only those facts which they wish the Court to consider. This information comprises the universe of facts upon which the parties' arguments rise or fall. Accordingly, the Court has disregarded any factual propositions that are not readily gleaned from the record or not properly presented in the parties' proposed factual findings, submitted exhibits, and briefs.

The parties may reference the factual recitation of this opinion to understand precisely what has been considered.

## III.   ANALYSIS

The admissibility of expert testimony is governed by Rule 702 of the Federal Rules of Evidence and *Daubert v. Dow Pharm., Inc.*, 509 U.S. 579 (1993). *Smith v. Ford Motor Co.*, 215 F.3d 713, 717-18 (7th Cir. 2000). Rule 702 states:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702. This rule requires the Court to ensure that "all scientific testimony or evidence admitted is not only relevant, but reliable." *Daubert*, 509 U.S. at 588. The Seventh Circuit has identified a two-step process for courts to discharge this "gate-keeping" function. *Deimer v. Cincinnati Sub-Zero Prods., Inc.*, 58 F.3d 341, 344 (7th Cir. 1994). First, the Court must assess whether the purported expert's testimony pertains to scientific knowledge. *Id*. (stating that inquiry must rule out "subjective belief or unsupported speculation"). Second, the Court should determine whether the expert's testimony will assist the trier of fact "in understanding the evidence or in determining a fact in issue." *Id*. The party seeking to offer expert testimony "has the burden of establishing that the pertinent admissibility

9

requirements are met by a preponderance of the evidence." Fed. R. Evid. 702 advisory committee's note, 2000 Amendments ¶ 1 (interpreting Fed. R. Evid. 104(a)).

Before delving into the parties' arguments, it is useful to set forth what, exactly, is Hansen's key testimony. Based on those excerpts of Hansen's deposition provided by the parties and Hansen's June 25, 1999 report, the Court understands that Hansen, at trial, would testify that, based on his investigation, "the origin of the fire at or near the television set indicates a malfunction within the television set [which] was the ignition source of the fire." (Aff. of. V. Arrowood Ex. C, at 5.) Hansen would opine that a component in the television malfunctioned. (Hansen Dep. 61.) To clarify, Hansen was *not* hired as an origin investigator and did not do an origin investigation. (*See* Aff. of T. Mullins in Supp. of Def.'s Mot. for Summ. J. and Mot. in Limine ("Mullins Aff.") Ex. C., Hansen Dep. ("Hansen Dep.") at 6, 7.) He would not speak to the issue of possible defective design. (Hansen Dep. 111.)

The battle in this case is not over the relevance of Hansen's testimony–on that point the parties seem in agreement, but its reliability. Testimony is reliable if the "expert is qualified in the relevant field and . . . the methodology underlying the expert's conclusions is reliable." *Masters v. Hesston Corp.*, 291 F.3d 985, 991 (7th Cir. 2002). Toshiba's arguments may be readily summarized: Hansen's findings were not achieved through the application of any method, which may be reliably considered "scientific." Rather, he relied only on his own observations, and failed to apply any scientific principles to arrive at his conclusions.

10

In its supporting brief, Toshiba discusses two cases, one from the Western District of Pennsylvania, *Pappas v. Sony Electronics, Inc.*, 136 F. Supp. 2d 413 (2000), and one from the Seventh Circuit, *Chapman v. Maytag Corporation*, 297 F.3d 682 (7th Cir. 2002). (Supp. Br. 9-11.) These cases, according to Toshiba, describe situations analogous to the present case in which expert testimony was deemed unreliable due to faulty methodology.

In *Chapman*, the Seventh Circuit considered a district court's denial of a motion to disqualify the plaintiff's expert's testimony. In that case, the plaintiff brought suit against the manufacturer of an electrical range after her husband was electrocuted. The defendant claimed that the electrocution followed from the plaintiff's failure to plug the appliance into a properly grounded outlet. The plaintiff's expert countered with the opinion that wear on the appliance's wire insulation on a pinched wire caused an electric current to escape the range without triggering a circuit breaker. The plaintiff's expert opined that the accident would have occurred even if the range had been properly grounded. The Seventh Circuit first noted that the district court had conducted "virtually no *Daubert* analysis of [the plaintiff's expert's] qualifications . . . ." *Chapman*, 297 F.3d at 688. More importantly, the Seventh Circuit stated:

> A very significant *Daubert* factor is whether the proffered scientific theory has been subjected to the scientific method. [citation omitted] It is undisputed that [the plaintiff's expert] did not conduct *any scientific tests or experiments in order to arrive at his conclusions*. [The plaintiff's expert] never produced any studies, tests or experiments to justify or verify his conclusions, despite his representations to the court that such test results would be forthcoming. In our opinion, the absence of any testing indicates that [the expert's] proffered opinions cannot fairly be characterized as scientific knowledge. Personal

11

> observation is not a substitute for scientific methodology and is insufficient to satisfy *Daubert's* most significant guidepost.

*Chapman*, 297 F.3d at 688 (emphasis added).

The facts in *Chapman* are very different from those before this Court. In *Chapman*, the expert offered a novel opinion with no testing of any kind to support it. In the present instance, it is undisputed that Hansen performed observations and conducted tests. Though a source of contention between the parties, Hansen also arguably utilized the scientific method to conduct his investigation. It is simply inaccurate to say that Hansen did nothing more than perform observations. *Chapman* is inapposite.

*Pappas*, which does not bind this Court, poses a different concern and one perhaps more salient to the instant action. In *Pappas*, the district court considered the admissibility of an expert's testimony in a product liability/fire case. The expert clearly followed a methodology; he examined the scene of the fire (a house), he took photographs, examined a circuit breaker panel, performed visual examinations of various pieces of evidence from the scene including–under magnification–an outlet. *Pappas*, 136 F. Supp. 2d 413, 417 (W.D. Pa. 2000). He also reviewed various informational materials including a manual about the product suspected of inciting the fire. *Id.* at 417-18. Ultimately, the expert concluded that there must have been a defect in the television that caused the fire.

The *Pappas* court excluded the expert's testimony, noting that the expert did not use a fixed set of guidelines in conducting his investigation and his methodology consisted of "reliance on his own experience, knowledge, and one simple principle: 'all fires are different

12

from one another.'" *Id.* at 420. The court explained that, while the expert's methodology appealed "to the common sense of a layman," the expert failed to introduce evidence showing that his methodology was reliable. *Pappas*, 136 F. Supp. 2d at 423. The court further noted that, during a hearing on the matter,:

> . . . plaintiffs did not introduce one book or article setting forth proper fire causation technique. They did not submit one witness, other than [the expert] himself, to testify about the reliability of [the expert's] examination. They did not even introduce specific evidence about how [the expert's] method in this case was similar to methods employed by him or others in the past.

*Pappas*, 136 F. Supp. 2d at 422. The court ruled that an expert could not utilize just any methodology in formulating his opinion; *Daubert* requires the application of a reliable methodology.

The *Pappas* decision is in some tension with an unpublished opinion cited by State Farm in defense of Hansen's testimony. In *Allstate Insurance Company v. Maytag Corporation*, the defendants sought to exclude the plaintiff's expert's testimony regarding the origin of a fire. 1999 WL 203349 (N.D. Ill. Mar. 30, 1999). The defendants charged that the expert's opinion was simply personal observation devoid of established methodology. The magistrate judge disagreed and explained:

> The Court does not believe that [the expert] is seeking to create a methodology here. Rather, [the expert] is offering an opinion based on deduction from certain facts and his own expertise; much as [the defendant's expert] is offering a different opinion, based on his own deduction from the facts he has observed and his expertise with the cooktop range.

*Allstate Ins. Co.*, 1999 WL 203349, at *5.

13

Apart from explications of these cases and a recitation of their version of the facts in the present case, Toshiba's supporting brief is surprisingly thin when explaining *why* Hansen's methodology is deficient. Toshiba's analysis boils down to the claim that Hansen only relied on his own opinions and did not utilize the scientific method. But, opinions drawn from observation and personal experience are not excluded by the *Daubert* analysis. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 156 (1999) ("But no one denies that an expert might draw a conclusion from a set of observations based on extensive and specialized experience."). Thus, even if the Court accepted Toshiba's claim that Hansen's opinions were derived only from his observations, see Supporting Brief 13, that fact would not prove dispositive of the reliability of his testimony.

Toshiba argues that personal observations, void of reliable methodology, are insufficient. Toshiba contends that Hansen has failed to comport with those standards regulating fire investigation, the National Fire Protection Association's (NFPA) Standard 921 entitled "Guide for Fire and Explosion Investigations." (Supp. Br. 11-14.) Toshiba cites an unreported Minnesota district court case setting forth the scientific method espoused by NFPA 921:

    (1)    recognizing the need for investigation;
    (2)    defining the problem;
    (3)    collecting the data;
    (4)    analyzing the data;
    (5)    developing a hypothesis; and
    (6)    testing the hypothesis.

14

(Supp. Br. 12 (citing *Am. Family Ins. Group v. JVC Americans Corp.*, 2001 WL 1618454, at *3 n.1 (D. Minn. Apr. 30, 2001)).) These same steps are also found in a copy of the NFPA 921 Guide (1998 edition) appended to State Farm's opposition brief.

Toshiba, in its supporting brief, does not specify which steps Hansen failed to follow or how those steps would be applied in the instant case. Instead, Toshiba insists that Hansen has only relied on his observations. It is unclear whether Toshiba is arguing that Hansen did not comport with the scientific method or the NFPA standards in any way, or simply omitted key steps, or some other possibility. If Toshiba is claiming that Hansen completely disregarded the proposed NFPA steps, it would have to assert that Hansen's x-raying the television set and performing destructive testing on the television set's main circuit board are properly characterized as only "observations." These activities, however, do qualify as some type of testing. The facts before the Court also reveal that Hansen collected and analyzed evidence from the fire scene. Ostensibly, Hansen followed the scientific method in some measure. Toshiba disagrees and states that "[t]he scientific method requires some type of testing of the expert's hypothesis to determine its validity." (Supp. Br. 14.) Toshiba does not clarify what testing was required or why certain of Hansen's actions should not be considered testing.

Toshiba obviously thinks that more was required of Hansen, and thus points to a perceived major flaw in Hansen's approach: "A simple examination of an exemplar television would have revealed the impossibility of Mr. Hansen's theory and saved the court

15

and all parties' substantial resources." (*Id.*) This statement highlights Hansen's failure to examine an exemplar television set and his belief, at the time of his deposition, that a 120-volt portion of the television set's circuit board was located on the right side of the television (as it would be viewed from the perspective of a person facing the front of the set). During his investigation, Hansen downloaded a schematic diagram for the Toshiba television set model CF1922J.

Toshiba obviously thinks that Hansen should have examined an exemplar television set. (The fact that he did not do such an examination is contained in Toshiba's proposed factual findings.) Whether Toshiba thinks Hansen should have done more in his investigation is not necessarily germane to the present inquiry. The question before the Court is the reliability of the methodology Hansen *did* utilize. Toshiba has not provided any support for the proposition that examination of an exemplar television set is a *sine qua non* for establishing a reliable investigation.

Toshiba's criticism is more likely directed at Hansen's purported use of an incorrect television model schematic as part of his investigation. The Complaint in this action identifies the model number of the allegedly defective television, CS19G22. By contrast, Toshiba, in its supporting brief, states that the model of the television at the scene of the fire was CF19G22, and alleges that Hansen looked at the blueprints for yet a different model, CF1922J. With three different model numbers before it, the Court still does not know the model of the television set at the scene of the fire; the parties' proposed facts contain no fact

16

informing the Court of the actual model. Nor, for that matter, has any fact been properly presented to the Court suggesting that Hansen based his methodology on the *wrong* schematic.

In a deposition submitted with State Farm's response to the motion for summary judgment, Hansen indicated that, since his deposition, he has reviewed a repair manual for the Toshiba television, model number CF19G22, and, having reviewed that manual, his opinions in this case were unchanged.[3] This affidavit, however, does not indicate why Hansen looked at the repair manual for the CF19G22 model. Toshiba, in its briefs, certainly argues that Hansen used the wrong data, but this is not grounded in any proffered facts.[4] The Court does not know, one way or another, whether Hansen's investigation was informed by a schematic for the wrong television set.

This leaves Toshiba with the arguments raised in its reply brief. Toshiba claims that Hansen's methodology was irreparably flawed because he failed to rule out other causes of the fire and did not employ deductive reasoning. Toshiba has not cited any case law stating that a failure to rule out causes of a defect or condition render an expert's opinion *per se*

---

[3]Hansen's expert report, dated June 25, 1999 and attached as Exhibit C to the Affidavit of Vicki L. Arrowood, states that "[t]he remains of the Toshiba television set (Model No. CF1933, Serial No. 92919909) were heavily damaged." (Arrowood Aff. Ex. C, at 4.)

[4]In its response brief, State Farm states that "Toshiba relies heavily on the fact that Mr. Hansen also reviewed a Sam's Photofact for a different model TV than the one that was present in the Brewers' condominium." (Opp'n Br. 14.) The Court does not construe this lone statement as either an admission or stipulation to the purported (and unproffered) fact that Hansen based his original methodology on an erroneous schematic.
    The Court notes that, while the parties have made the issue of reliability the center of their argumentation, the question of relevance might loom large if Hansen did indeed base his opinions, in whole or part, on the wrong schematic.

17

inadmissible.  Instead, Toshiba relies on the NFPA Guide.  In this circuit, however, elimination of other causes when determining probable cause is not a prerequisite to establish reliable methodology.  *See Mihailovich v. Laatsch*, 359 F.3d 892, 920 (7th Cir. 2004).  And, other courts have found expert analyses, similar to that performed by Hansen to rule out causes, sufficient to pass muster under *Daubert*.  *See Abu-Hashish v. Scottsdale Ins. Co.*, 88 F. Supp. 2d 906 (N.D. Ill. 2000); *Smith v. Ford Motor Co.*, 882 F. Supp. 770 (N. D. Ind. 1995).  Furthermore, the Court notes that Hansen's original report, dated June 25, 1999, lists various articles in the room of the fire and identifies the amount, if any, of damage to each article.  In that report, Hansen claims, based on his examination and observation, to rule out various sources of ignition.  (*See* Arrowood Aff. Ex. C, at 5.)  For example, the outlet under the front window in the west wall showed signs of "external heat and fire from the front, and its interior show[ed] no sign of any electrical failure . . . ."  (*See* Arrowood Aff. Ex C*,* at 3.)  If Toshiba thinks that Hansen should have taken further steps to rule out potential causes of the fire, it may probe that matter more fully on cross-examination.

Toshiba's final attack in its reply forwards the proposition that Hansen's opinion is flawed because he essentially assumed that the television started the fire and then "worked backward to arrive at the conclusion that the television must have been defective because it is where he thinks the fire started."  (Reply 7.)  Much of Toshiba's argument on this point relies on the contention that Hansen's "hypothesis" was incorrect, i.e., that the television started the fire.  (*Id.*)  As explained above, the Court sees no reason to accept Toshiba's

18

characterization of Hansen's hypothesis, particularly given the facts before the Court. And, the Court has found evidence in the record demonstrating that Hansen did eliminate certain items at the scene as possible causes of the blaze. Additionally, Hansen's deposition makes clear that his opinion is, at some level, inextricably linked with Kelm's examination of the fire scene. Such interdependence in expert opinions is permissible. *See Walker v. Soo Line R.R. Co.*, 208 F.3d 581, 588 (7th Cir. 2000). Thus, Hansen's opinion borrows from Kelm's opinion that the fire may have started in vicinity of the television set. In other words, Hansen's presumption that the fire started in the area of the Toshiba television–if he did, in fact, have such a presumption–may not be indicative of flawed methodology warranting exclusion of his testimony.

## IV. CONCLUSION

The Court is satisfied, based on the record before it, that Hansen will provide expert testimony that is both relevant and derived from a reliable methodology. Hansen has experience in investigating fires generally and has ample experience with fires related to television sets. Hansen represents that he followed the NFPA standards and, having reviewed those recommended procedures and the record in this case, the Court finds that Hansen did follow that methodology. There is no dispute between the parties that these standards have been generally accepted by investigators and reflect an established, reliable and tested methodology for investigating fires. Any deviations, omissions, or defects in Hansen's methodology are best subjected to examination through cross-examination.

19

The Court emphasizes that its finding that Hansen's opinion passes muster under *Daubert* is based on the information presently before it. A party may, as a matter of course, ask the Court to revisit this conclusion in light of new facts or evidence previously not presented to, or considered by, the Court.

Because the Court finds Hansen's testimony relevant and reliable, Toshiba's motion for summary judgment must be denied.

**NOW, THEREFORE, BASED ON THE FOREGOING, IT IS HEREBY ORDERED THAT**:

Toshiba's Motion for Summary Judgment and Motion in Limine (Docket No. 23) is **DENIED**.

Dated at Milwaukee, Wisconsin this 31st day of March, 2006.

        **BY THE COURT**

        s/ Rudolph T. Randa
        **Hon. Rudolph T. Randa**
        **Chief Judge**

20

Case 2:04-cv-00359-RTR   Filed 03/31/06   Page 20 of 20   Document 48